IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL FIRE & MARINE                 *
INSURANCE COMPANY, as subrogee
of Manticorp LLC and its related       *
entities,
                                       *
        *Plaintiff*,
                                       *
                                          **Case No. 1:22-cv-02723-JRR**
        v.                             *

ADVANCED LIGHTING                      *
TECHNOLOGIES LLC, and its related
entity VENTURE LIGHTING               *
INTERNATIONAL, INC., *et al.*,
                                       *
        *Defendants*.
                                       *

*       *       *       *       *       *       *       *       *       *       *       *       *

<u>**MEMORANDUM OPINION**</u>

This matter comes before the court on Defendant Albion Enterprises, LLC, t/a pHive.8's ("Albion") Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction.  (ECF No. 67; the "Motion.")  The court has reviewed all papers.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, by accompanying order, the Motion will be granted.

I.      <u>**BACKGROUND**</u>[1]

Plaintiff National Fire & Marine Insurance Company ("National Fire") is an insurance company incorporated in the State of Nebraska with its principal place of business in Omaha, Nebraska.  (ECF No. 58 ¶ 1; the "Second Amended Complaint.")  National Fire brings this action

---

[1] For purposes of this memorandum, the facts are drawn from the Second Amended Complaint, the Motion papers, and attached exhibits, with all disputes of fact and reasonable inferences from the facts resolved in favor of Plaintiff. *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2004).

as subrogee to the rights of its insured, Manticorp, LLC ("Manticorp"), following an August 2020 fire at commercial property leased by Manticorp, owned by Northbranch Properties, LLC ("Northbranch"), and located at 975 Kelly Road in Cumberland, Maryland (the "Property"). *Id.* ¶¶ 2, 17-19. Manticorp is a limited liability company organized under the laws of the State of Maryland and is licensed to cultivate, grow, and produce cannabis in the State. Northbranch is a Maryland limited liability company. *Id.* ¶¶ 16, 25-26.

Defendant Albion is organized under the laws of the State of Colorado with its principal place of business in Denver. (ECF No. 58 ¶ 5.) Albion trades as pHive.8 and is in the business of importing, selling, and distributing lighting products from Holland into the United States. *Id.* ¶ 6. Defendant GrowGeneration USA, Inc. ("GrowGeneration") is the successor to GrowGeneration Pueblo Corporation ("GrowGeneratio Pueblo"),[2] which was the successor to Chlorophyll, Inc. ("Chlorophyll"). *Id.* ¶ 7. GrowGeneration is a Delaware corporation with its principal place of business in Colorado. *Id.* ¶ 8. In 2018, GrowGeneration Pueblo entered into an Asset Purchase Agreement with Chlorophyll, which operated a Denver retail store with products including "light fixtures imported from the Netherlands and distributed to retail locations in the United States by [Albion]." *Id.* ¶ 10 After the deal closed, GrowGeneration Pueblo continued operations of the former Chlorophyll store – employing former Chlorophyll employees, selling the same products to the same customer base, and using the same distributors Chlorophyll had used. *Id.* ¶ 12.

This action arises out the above-mentioned fire at the Property. Plaintiff contends its insured suffered property damage and losses, and that the fire was caused by defective lighting products that Defendants "sold, supplied distributed, imported, and otherwise placed . . . in the stream of commerce . . . ." (ECF No. 58 ¶¶ 57, 58, 62, 65.)

---

[2] In August 2021, GrowGeneration Pueblo Corporation changed its name to GrowGeneration USA, Inc., and its state of incorporation from Colorado to Delaware. (ECF No. 58 ¶ 9.)

National Fire alleges that, "[i]n 2017, Manticorp purchased the E. Papillon light fixtures and 1000-Watt Sunmaster lamps from Chlorophyll, Inc., which shipped the E. Papillon light fixtures and lamps to the Manticorp property in Maryland with the direct knowledge and/or reasonable expectation that the E. Papillon light fixtures and lamps would be used at the property." *Id.* ¶ 38. National Fire alleges further that "[t]he E. Papillon light fixtures were imported into, marketed, sold, and distributed in the United States by [Albion]." *Id.* ¶ 29. "On August 17, 2020, while the Sunmaster lamps were powered on in connection with the operations at the property, one of the arc tubes filled with electrically energized high pressure sodium gases catastrophically exploded, failed, disintegrated and resulted in gases, sparks and other highly heated components of the lamp to be expelled through the cracked outer glass envelope of the lamp and caused a fire at the property ("the fire")." *Id.* ¶ 57. National Fire alleges that at all times relevant, "the E-Papillon light fixtures and related grow lamps were sold, supplied and distributed by [Albion] to Chlorophyll, Inc." *Id.* ¶ 37.

On January 26, 2023, National Fire filed its Second Amended Complaint which sets forth nine counts: (Count I) Products Liability against Advance Lighting and Venture Lighting; (Count II) Negligence against Advance Lighting and Venture Lighting; (Count III) Breach of Implied Warranties against Venture Lighting; (Count IV) Products Liability against Albion/pHive.8; (Count V) Negligence against Albion/pHive.8; (Count VI) Breach of Implied Warranties against Albion/pHive.8; (Count VII) Products Liability against GrowGeneration; (Count VIII) Negligence against GrowGeneration; and (Count IX) Breach of Implied Warranties against GrowGeneration. (ECF No. 68 at 14-25.)

On February 15, 2023, Albion filed the Motion pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that the court may not exercise personal jurisdiction over it because it does not

have sufficient minimum contacts with the State of Maryland.  (ECF No. 67 at 5-6.)  The parties engaged in limited discovery on the issue of personal jurisdiction to offer the court a more fulsome record to rule on the issue.  (ECF No. 71.)

## II.    LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(2)

"When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), 'the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'"  *CoStar Realty Info., Inc. v. Meissner,* 604 F. Supp. 2d 757, 763 (D. Md. 2009) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003)) (citations omitted).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court."  *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).  "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge."  *Id.*  "[I]f a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an 'evidentiary hearing'" or, at the very least, "afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments, using procedures that provide the parties with a fair opportunity to present to the court the relevant facts[.]"  *Id.* (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir.

2005)); *Sec. and Exch. Comm'n v. Receiver for Rex Ventures Group, LLC*, 730 F. App'x 133, 136 (4th Cir. 2018) (internal citations and quotation marks omitted).

In *Grayson,* the Fourth Circuit affirmed the district court's application of the preponderance standard where the parties had engaged in the "full discovery process" and "[n]o party ever claimed that the record was inadequately developed, that relevant evidence was missing, or that it was unable to fairly present its position." 816 F.3d at 269. In contrast, in *Securities & Exchange Commission*, the Fourth Circuit reversed the district court's use of the preponderance standard because the district court "substantially curtailed jurisdictional discovery" and the defendant "complained that the record was incomplete and that the full discovery process had not occurred." 730 F. App'x at 137. Here, the court ordered limited jurisdictional discovery. (ECF No. 73.) National Fire indicates in its Opposition that "the discovery provided by Albion did not fairly or accurately comply with the scope of discovery ordered by the [c]ourt." (ECF No. 76 at 11.) Accordingly, National Fire need only make a *prima facie* showing of personal jurisdiction. Importantly, "[i]n deciding whether the plaintiff has proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993).

## III.   ANALYSIS

### A.   Personal Jurisdiction

"The requirement that the court have personal jurisdiction . . . springs not from Article III of the Constitution, but from the Due Process Clause." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 131 (4th Cir. 2019) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "Because the personal jurisdiction requirement 'recognizes and protects

an individual liberty interest, . . . the requirement may be waived by a defendant's 'express or implied consent to the personal jurisdiction of the court.'" *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 703.) "Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)) (citations omitted). The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of "specific" or "general" jurisdiction. *Id.*

"A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A., v. Brown,* 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). Specific jurisdiction depends on an "'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)). National Fire does not contend the court has general jurisdiction over Albion; rather, it proceeds on grounds of specific jurisdiction. (ECF No. 76 at 8.)

**1.    Maryland Long-Arm Statute**

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). It is undisputed that Albion is a non-resident defendant corporation.

In order for the court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). This court accepts as binding Maryland courts' interpretation with regard to the state's long-arm statute. *Mylan Labs.*, *Inc. v. Akzo, N.V.,* 2 F.3d 56, 61 (4th Cir. 1993). It is well settled in Maryland that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the United States Constitution. *Mohamed v. Michael*, 279 Md. 653 (1977). Thus, this court's statutory and constitutional inquiry is merged for purposes of establishing personal jurisdiction. *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996).

Maryland's long-arm Statute provides:

> **(a)** If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

> **(b)** A court may exercise personal jurisdiction over a person, who directly or by an agent:

>> **(1)** Transacts any business or performs any character of work or service in the State;

>> **(2)** Contracts to supply goods, food, services, or manufactured products in the State;

>> **(3)** Causes tortious injury in the State by an act or omission in the State;

>> **(4)** Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

**(5)** Has an interest in, uses, or possesses real property in the State; or

**(6)** Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(a) and (b).

Maryland's long-arm statute requires plaintiffs to identify the section of the long-arm statute on which they rely. *Id.* § 6-103(a); *see Ottenheimer Publishers, Inc. v. Playmore, Inc*., 158 F. Supp. 2d 649, 652 (D. Md. 2001) (explaining that "[i]t is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction . . . ."). This requirement can be met through a complaint or in opposition to a Rule 12(b)(2) motion. *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 597 (D. Md. 2014). In its opposition, National Fire asserts the court may exercise specific personal jurisdiction over Albion Enterprises pursuant to sections 6-103(b)(1) through (4) of the long-arm statute. (ECF No. 76 at 8.)

### *i.*      *Section 6-103(b)(1)*

Under Section 6-103(b)(1), the court may exercise personal jurisdiction over an entity that "[t]ransacts any business or performs any character of work or service in the State." MD. CODE ANN. CTS. & JUD. PROC. § 6-103(b)(1). The phrase "transacting business" does not require commerce or transactions for profit; it is, however, construed narrowly and typically requires significant negotiations or intentional advertising. *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350 (1967). "An essential factor in determining whether business transactions give rise to specific jurisdiction is whether the defendant initiated the contact." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009).

The record before the court is that Albion did not transact business in Maryland. The affidavit of Lee McCall, a Member Partner of Albion, provides that "Albion Enterprises does not contract with or distribute products to a resident in the State of Maryland." (Def.'s Mot, Lee McCall Decl., Exhibit 1, ECF No. 67-1 ¶ 6.) Further, McCall's affidavit provides that Albion and Chlorophyll were separate businesses, had their own distinct warehouses, employees, and customer accounts. *Id.* ¶ 9. Albion also "did not control, manage, or involve itself in Chlorophyll, Inc.'s business contracts or sales." *Id.* ¶ 11. Mike Kim, Albion Financial Controller, attests by affidavit that on March 7, 2019, the only Albion client in Maryland – a wholesale supplier – "placed an order with Albion Enterprises for substrates and liquid fertilizer, which totaled $560.47." (Def.'s Reply; Mike Kim Decl., Exhibit 2, ECF No. 79-2 ¶¶ 3-4.) National Fire's allegations do not conflict with these attestations or lead to a contrary conclusion, even when viewed in its favor.

Nothing before the court suggests that National Fire conducted significant negotiations, or intentionally advertised and sold products, in Maryland. *Craig v. Gen. Finance Corp.*, 504 F. Supp. 1033, 1038 (D. Md. 1981). Further, National Fire does not allege that Albion engaged in contract negotiations with Manticorp in Maryland regarding the E. Papillion or Sunmaster products; and, while National Fire alleges Albion marketed and distributed products broadly (ECF No. 58 ¶¶ 34-36), it does not contend that Albion "intentionally advertised or sold its products in" Maryland. *Clarke Veneers and Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, No. CV GLR-19-1738, 2019 WL 7565450, at *3 (D. Md. Oct. 23, 2019), *aff'd*, 821 F. App'x 243 (4th Cir. 2020). Section 6-103(b)(1) of the long-arm statute does not provide a basis to assert personal jurisdiction over Albion.

ii.      *Section 6-103(b)(2)*

Section 6-103(b)(2) of Maryland's long-arm statute applies only to contracts to supply goods, food, services or manufactured products in Maryland. *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 535 (D. Md. 2014). This section of the long arm statute does not extend to contracts negotiated in Maryland, where the contracted for goods or services are not provided within the state. *Id.; A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 370 (D. Md. 2011) (internal citations omitted) (holding that section 6-103(b)(2) of the long-arm statute did not apply where the plaintiff did not "identif[y] any contractual obligations on the part of [defendant] to provide services in Maryland."); *compare Tulkoff Food Products, Inc. v. Martin*, No. ELH-17-350, 2017 WL2909250 at *6 (D. Md. July 7, 2017) (finding § 6-103(b)(2) satisfied where defendants entered an agreement to deliver goods to Maryland).

Here, there are no allegations that Albion contracted to provide goods or services in Maryland. Although National Fire alleges that Albion was aware that the E. Papillon and Sunmaster products may be sold in Maryland, Albion is not alleged to have contracted to provide or sell the E. Papillon light fixture or the Sunmaster grow lamp in Maryland. *See McKown v. Criser's Sales and Serv.,* 48 Md. App. 739, 743 n.2 (1981) (rejecting application of 6-103(b)(2) to a defendant that sold a vehicle in Virginia and provided documents to register the vehicle in Maryland, representing his knowledge that the vehicle would end up in Maryland). Albion is alleged to have sold, supplied, and/or distributed the E. Papillon light fixtures and 1000-Watt Sunmaster lamps to Chlorophyll, who then sold these items to Manticorp in Maryland. (ECF No. 58 ¶¶ 37-38.) The court declines to assert personal jurisdiction under section 6-103(b)(2).

### iii.        Section 6-103(b)(3)

Albion concedes that the alleged tortious injury occurred in Maryland to the extent the light fixture caused the injury, but urges that it did not commit an act in Maryland for purposes of personal jurisdiction analysis. (ECF No. 67 at 8.) The court agrees.

Under section 6-103(b)(3), "there must be (1) a tortious injury in Maryland that was (2) caused by an act or omission in Maryland." *Craig v. Gen. Finance Corp. of Ill.*, 504 F. Supp. 1033, 1036 (D. Md. 1980). National Fire fails to allege that Albion engaged in an act or omission within Maryland. *Mikes Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 534 (D. Md. 2010) (granting motion to dismiss where the plaintiff failed to show any injury resulting from the defendant's "acts or omissions *in* Maryland"). The court declines to assert personal jurisdiction under section 6-103(b)(3).

### iv.        Section 6-103(b)(4)

Section 6-103(b)(4) permits a court to exercise personal jurisdiction over a defendant who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(4). Under this section, the court "may retain personal jurisdiction for tortious activity occurring outside Maryland if the defendant engages in a 'persistent course of conduct' within the state." *Pandit v. Pandit*, No. 8:18-cv-01136-PX, 2018 WL 5026373, at *3 (D. Md. Oct. 17, 2018). "Establishing a 'persistent course of conduct' under section 6-103(b)(4) is 'not tantamount to establishing general jurisdiction, but it does require greater contacts that those necessary to establish jurisdiction under [section 6-103(b)(1)].'" *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691,

698 (D. Md. 2012) (quoting *Am. Ass'n of Blood Banks v. Bos. Paternity, LLC*, No. DKC 2008-2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009)).

As stated above, the record before the court is that Albion does not transact business, or have a presence, in Maryland sufficient to satisfy Maryland's long-arm statute.  (McCall Decl. ¶¶ 5-8.)  Albion's one-time contract four years ago to provide a Maryland wholesaler substrates and liquid fertilizer for $560.47 falls far short.  Nationwide fails to allege that Albion regularly engaged in transactions with Maryland residents, regularly solicited business from Maryland residents, or that Albion has earned substantial revenue from Maryland residents.  *See Metro. Regional Info. Sys., Inc. v. Am. Home Realty Network*, 888 F. Supp. 2d 691, 702 (D. Md. 2012) (finding personal jurisdiction under section 6-103(b)(4) was appropriate where defendant "engaged in regular transactions with Maryland residents, regularly solicits business from Maryland residents, and has earned substantial revenue as a result of transactions with Maryland residents").  Accordingly, the court declines to assert personal jurisdiction under section 6-103(b)(4).

Even if Albion's alleged conduct satisfied Maryland's long-arm statute, as discussed below, the exercise of personal jurisdiction over Albion would not comport with due process.

### 2.   Due Process Clause of the Fourteenth Amendment

Personal jurisdiction over a non-resident defendant is constitutionally permissible where the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted).  "[E]ven a single act" between a non-resident defendant and the forum state may establish personal jurisdiction if it creates a "substantial connection" with the state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).  Also relevant is whether "the defendant's conduct and connection

with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Fourth Circuit applies a three-part test to determine whether a defendant has sufficient minimum contacts with the forum state. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). The court considers: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Id.* (quoting *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Here, National Fire contends that jurisdiction is proper over Albion, because Albion knew that the E. Papillion light fixture would be distributed to Chlorophyll's ultimate consumer in Maryland. (ECF No. 76 at 9.)

The Supreme Court has supported the exercise of jurisdiction under a "stream of commerce" theory, where a corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp.*, 444 U.S. at 297-98. The Court expanded on the "stream of commerce" theory in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County.* 480 U.S. 102 (1987). Justice O'Connor, writing for a plurality of the Court, concluded that "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. Examples of additional conduct to indicate something more than awareness that a product will reach the forum state include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* In contrast, Justice Brennan opined

13

that "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause" and a "showing of additional conduct" is unnecessary. *Id.* at 117.

The Supreme Court clarified the steam of commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro*, holding that "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." 564 U.S. 873, 882 (2011). Importantly, under no stream of commerce theory is "a single isolated sale . . . sufficient." *Id.* at 888.

The Fourth Circuit has adopted Justice O'Connor's stream of commerce approach:

> To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994). As such, to support stream of commerce personal jurisdiction in the Fourth Circuit, the defendant must have engaged in activity that was purposefully directed at the state. *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997).

In *Lesnick*, the Fourth Circuit affirmed the trial court's denial of personal jurisdiction over a non-resident defendant who knew its products would be sold in Maryland. While the defendant acknowledged that "it placed the product in commerce . . . with the knowledge that [the product] would be sold in Maryland," the court held that absent additional conduct directed toward the state, personal jurisdiction was lacking. 35 F.3d at 946-47. In *Celotex,* the Fourth Circuit ruled similarly, affirming the trial court's denial of personal jurisdiction where the plaintiff "has not alleged more

14

than the entry of [the products] into the stream of commerce with the expectation that they would be purchased in West Virginia." 124 F.3d at 629. Critically, there were no allegations of purposeful activity directed at West Virginia. *Id.*; *see also Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 683 (1st Cir. 1992) (affirming lower court's denial of jurisdiction where the only contact the defendant had with the forum state was the sale of its product to a third party who sold the product to plaintiff, and where there were no allegations "[defendant] designed the product for Maine, advertised in Maine, established channels for providing regular advice to customers in Maine, or marketed the product through a distributor who had agreed to serve as a sales agent in Maine").

Applying this formulation, this court in *KeraLink International, Inc. v. Stradis Healthcare, LLC*, determined that a defendant's sale of a product to a third party who then sold the product to the plaintiff was insufficient to support personal jurisdiction despite the defendant's awareness that the product might be sold in the forum state. No. CCB-18-2013, 2018 WL 6790305, at *3 (D. Md. Dec. 26, 2018) (finding plaintiff had "not sufficiently alleged that [defendant] targeted Maryland or that 'something more' than mere foreseeability evidenced [defendant's] purposeful availment of the privilege of conducting business in Maryland").

In this case, National Fire alleges that Albion distributed the E. Papillion and Sunmaster products to Chlorophyll; that Manticorp purchased the E. Papillion and Sunmaster products from Chlorophyll; and that Chlorophyll shipped the products to the Property in Maryland. National Fire further alleges that Albion "knew and was aware, either directly or indirectly, that the E. Papillion light fixtures and lamp products it supplied within the chain of distribution were being sold and delivered in the State of Maryland to a Maryland consumer." (ECF No. 58 ¶ 40.) Under Justice

O'Connor's brand of the stream of commerce theory, as adopted by the Fourth Circuit, additional alleged contacts are required to amount to purposeful direction of activity within the forum state.

Here, none of the factors identified by Justice O'Connor is present.  Similar to the defendant in *Boit*, National Fire does not allege, and nothing before the court suggests, that Albion designed the E. Papillon light fixtures and/or Sunmaster lamps for the Maryland market, advertised in Maryland, established any channels to provide regular advice to customers in Maryland, or marketed the E. Papillion light fixtures and/or Sunmaster lamps through a distributor who agreed to serve as a sales agent in Maryland.  National Fire alleges merely that Albion was aware that the E. Papillion light fixtures and Sunmaster lamps would be sold in Maryland.  This sort of conduct, alone, is insufficient.  *See generally Lesnick* and *Celotex, supra.*  Based on the allegations, at most, Albion knew only that the E. Papillion light fixtures and Sunmaster lamps might end up in Maryland.[3]  This case arises out of a "single isolated sale."[4]  *McIntyre*, 564 U.S. at 888.  Extension of personal jurisdiction over Albion does not pass muster under due process.

### B.    <u>Transfer</u>

In its Opposition, National Fire requests that that its claims against Albion be transferred to the United States District Court for the District of Colorado if the court determines that it lacks personal jurisdiction over Albion.  (ECF No. 76 at 11.)

"When a district court finds it lacks personal jurisdiction, it has discretion under 28 U.S.C. § 1406(a) to transfer the case to an appropriate jurisdiction."  *Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, No. ELH-13-03702, 2015 WL 751344, at *15 (D. Md. Feb. 20, 2015); *see* 28 U.S.C.

---

[3] Albion attests that it 1) does not carry on business outside of Colorado; 2) is registered to do business only in Colorado; 3) does not directly sell products in Maryland; and 4) did not manufacture the light fixture at issue in this case.  (Pl.'s Opp., Lee McCall Dep., Exhibit A, ECF No. 76-1 at 23:20-24:4; McCall Decl. ECF No. 67-1 ¶¶ 3, 6.) National Fire does not allege contrary facts.

[4] Even construing McCall's testimony in the light most favorable to National Fire, such that "it was possible" Albion shipped the light fixture on behalf of Chlorophyll to Maryland (McCall Dep. 51:13-25), one shipment is insufficient to establish specific jurisdiction.  *McIntyre*, 564 U.S. at 888.

§ 1406(a) (holding that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").  ""Section 1406(a) reflects a policy favoring adjudications on the merits over dismissals." *Fasolyak v. Cradle Society, Inc.*, No. AW-06-622, 2006 WL 8457066, at \*6 (D. Md. June 15, 2006).  "The [c]ourt's decision 'turn[s] on the particular facts of the case,' and 'all the relevant factors to determine whether . . . on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 319 (D. Md. 2012) (quoting *Byerson v. Equifax Info. Servs. LLC*, 467 F.Supp.2d at 632 (internal quotation marks omitted).  "The decision to transfer is 'committed to the discretion of the district court.'" *Id.* (quoting *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir.1984)).

In considering whether a transfer is appropriate, the court considers: "(1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008).  The interests of justice include "system integrity and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).  "Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (quoting *Samsung*, 386 F. Supp. 2d at 716).  "Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* (citing *Samsung*, 386 F. Supp. 2d at 716, n.16).

Transfer of National Fire's claims against Albion to the District of Colorado does not serve the interests of justice because National Fire already filed suit against Albion in the District of Colorado over these same issues.  *National Fire & Marine Ins. Co. v. Albion Enterprises, LLC, et al.*, No. 23-cv-01144-DDD-STV (D. Colo. 2023).  Judicial economy and efficiency do not favor transfer of this case because to do so would merely require another court to consolidate or otherwise administer National Fire's claims filed here with those pending in the District of Colorado.  Should National Fire seek to add claims against Albion, it may pursue that in Colorado.

## **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant Albion Enterprises, LLC, t/a pHive.8's Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction (ECF No. 67) will be granted.

/S/

_____

Julie R. Rubin
United States District Judge

September 20, 2023