IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATIONAL FIRE & MARINE INSURANCE COMPANY**, as subrogee of Manticorp LLC and its related entities,<br><br>*Plaintiff*,<br><br>v.<br><br>**ADVANCED LIGHTING TECHNOLOGIES LLC**, and its related entity **VENTURE LIGHTING INTERNATIONAL, INC.**, *et al.*,<br><br>*Defendants*. | *<br>*<br>*<br>*<br>*  Case No. 1:22-cv-02723-JRR<br>*<br>*<br>*<br>*<br>* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Advanced Lighting Technologies, LLC's ("Advanced Lighting") Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction (ECF No. 68; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, Advanced Lighting's Motion will be granted.

**I.   BACKGROUND**[1]

Plaintiff National Fire & Marine Insurance Company ("National Fire") is an insurance company incorporated in the State of Nebraska with its principal place of business in Omaha, Nebraska. (ECF No. 58 ¶ 1; the "Second Amended Complaint.") National Fire brings this action

---

[1] For purposes of this memorandum, the facts are drawn from the Second Amended Complaint, the Motion papers, and attached exhibits, with all disputes of fact and reasonable inferences from the facts resolved in favor of Plaintiff. *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2004).

as subrogee to the rights of its insured, Manticorp, LLC ("Manticorp"), following an August 2020 fire at commercial property leased by Manticorp, owned by Northbranch Properties, LLC ("Northbranch"), and located at 975 Kelly Road in Cumberland, Maryland (the "Property"). *Id.* ¶¶ 2, 17-19. Manticorp is a limited liability company organized under the laws of the State of Maryland and is licensed to cultivate, grow, and produce cannabis in the State. Northbranch is a Maryland limited liability company. *Id.* ¶¶ 16, 25-26. Defendant Advanced Lighting is a Delaware limited liability company. *Id.* ¶ 3. Defendant Venture Lighting is an Ohio corporation with its principal place of business in Glen Willow, Ohio. *Id.* ¶ 4.

This action arises out the above-mentioned fire at the Property. Plaintiff contends its insured suffered property damage and losses, and that the fire was caused by defective lighting products that Defendants "sold, supplied distributed, imported, and otherwise placed . . . in the stream of commerce . . . ." (ECF No. 58 ¶¶ 57, 58, 62, 65.)

Prior to the fire, Manticorp purchased 1000-Watt Sunmaster lamps that were sold and distributed by Advanced Lighting and/or Venture Lighting. *Id.* ¶ 46. National Fire alleges that "Advanced Lighting and Venture Lighting regularly and systematically advertise, promote, market, sell and distribute its lamp products throughout the United States, including in the State of Maryland, both directly and also through a series of retailers, wholesalers, distributors and online sales efforts." *Id.* ¶ 47.

On January 26, 2023, National Fire filed its Second Amended Complaint which sets forth nine counts: (Count I) Products Liability against Advance Lighting and Venture Lighting; (Count II) Negligence against Advance Lighting and Venture Lighting; (Count III) Breach of Implied Warranties against Venture Lighting; (Count IV) Products Liability against Albion/pHive.8; (Count V) Negligence against Albion/pHive.8; (Count VI) Breach of Implied Warranties against

Albion/pHive.8; (Count VII) Products Liability against GrowGeneration; (Count VIII) Negligence against GrowGeneration; and (Count IX) Breach of Implied Warranties against GrowGeneration. (ECF No. 68 at 14-25.)

On February 17, 2023, Advanced Lighting filed the Motion pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that the court may not exercise personal jurisdiction over it because it does not have sufficient minimum contacts with the State of Maryland. (ECF No. 68-1 at 1, 7.) The parties engaged in limited discovery on the issue of personal jurisdiction to offer the court a more fulsome record to rule on the issue. (ECF No. 71.)

## II. LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(2)**

"When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), 'the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" *CoStar Realty Info., Inc. v. Meissner,* 604 F. Supp. 2d 757, 763 (D. Md. 2009) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)) (citations omitted).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* "[I]f a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it

3

must conduct an 'evidentiary hearing'" or, at the very least, "afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments, using procedures that provide the parties with a fair opportunity to present to the court the relevant facts[.]"  *Id.* (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005));  *Sec. and Exch. Comm'n v. Receiver for Rex Ventures Group, LLC*, 730 F. App'x 133, 136 (4th Cir. 2018) (internal citations and quotation marks omitted).

In *Grayson,* the Fourth Circuit affirmed the district court's application of the preponderance standard where the parties had engaged in the "full discovery process" and "[n]o party ever claimed that the record was inadequately developed, that relevant evidence was missing, or that it was unable to fairly present its position."  816 F.3d at 269.  In contrast, in *Securities & Exchange Commission*, the Fourth Circuit reversed the district court's use of the preponderance standard because the district court "substantially curtailed jurisdictional discovery" and the defendant "complained that the record was incomplete and that the full discovery process had not occurred."  730 F. App'x at 137.  Here, the court ordered limited jurisdictional discovery.  (ECF No. 73.)  National Fire argues that "Advanced Lighting failed to produce a prepared witness who could account for a critical time period."  (ECF No. 74 at 14.)  Accordingly, National Fire need only make a *prima facie* showing of personal jurisdiction.  Importantly, "[i]n deciding whether the plaintiff has proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."  *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993).

4

### III.   ANALYSIS

####   A.   Personal Jurisdiction

"The requirement that the court have personal jurisdiction . . . springs not from Article III of the Constitution, but from the Due Process Clause." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 131 (4th Cir. 2019) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "Because the personal jurisdiction requirement 'recognizes and protects an individual liberty interest, . . . the requirement may be waived by a defendant's 'express or implied consent to the personal jurisdiction of the court.'" *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 703.) "Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)) (citations omitted). The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of "specific" or "general" jurisdiction, which the court addresses in more detail below. *Id.*

"Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located." *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 438 (D. Md. 2019). "[I]n Maryland, 'to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment.'" *Id.* (quoting *Carefirst of Md.*, 334 F.3d at 396).

5

1.  **<u>Maryland Long-Arm Statute</u>**

"The Maryland long-arm statute . . . limits specific jurisdiction to cases where the cause of 'action aris[es] from any act enumerated in the statute itself.'" *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.,* 374 F. Supp. 2d. 465, 472 (D. Md. 2005) (quoting MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(b)(1)). "Thus, a plaintiff must 'identify a specific Maryland statutory provision authorizing jurisdiction.'" *Id.* (quoting *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). "To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion." *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 597 (D. Md. 2014); *Carbone v. Deutsche Bank Nat'l Trust Co.*, No. RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016) (noting that it is preferable a plaintiff identify the applicable statute in its complaint, however, "the plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss").

The Maryland long-arm statute provides in relevant part:

> **(a)** If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
> **(b)** A court may exercise personal jurisdiction over a person, who directly or by an agent:
>   **(1)** Transacts any business or performs any character of work or service in the State;
>   **(2)** Contracts to supply goods, food, services, or manufactured products in the State;
>   **(3)** Causes tortious injury in the State by an act or omission in the State;
>   **(4)** Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State . . .

MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(a)-(b). Pursuant to Maryland's long-arm statute, the court may "assert personal jurisdiction over (1) persons who directly conduct activities in Maryland; and (2) persons who conduct activities in Maryland through an agent." *Mylan Labs., Inc.,* 2 F.3d at 61.

National Fire argues that jurisdiction is proper because Advanced Lighting is an alter ego of Venture Lighting, and Venture Lighting was Advanced Lighting's agent who engaged in acts that fall within subsection (b)(1), (b)(2), (b)(3), or (b)(4). (ECF No. 74 at 8.) The precise issue, therefore, is whether Advanced Lighting is subject to personal jurisdiction because of the activities of its subsidiary, Venture Lighting.

In Maryland, courts analyze the alter ego doctrine and piercing the corporate veil under a single framework. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60-63 (4th Cir. 1993) (adopting "the so-called 'agency' test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes"); *see Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 723-24 (D. Md. 2000) (noting that "in Maryland, the determination of agency and test for piercing the corporate veil are essential the same"). "Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil, and courts do so only where necessary to prevent fraud or to enforce a paramount equity." *Rheumatology Nurses Soc'y, Inc. v. Phoenix Grp. Holdings, LLC*, No. CCB-08-1675, 2009 WL 249233, at *3 (D. Md. Jan. 8, 2009) (citation omitted). "[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

National Fire does not assert that the corporate form has been used to perpetrate a fraud; instead, National Fire argues that Venture Lighting's jurisdictional contacts should be imputed to

Advanced Lighting "under the 'alter ego' doctrine—a doctrine that this [c]ourt has concluded 'is not a separate basis for piercing the [corporate] veil, but is rather subsumed 'in the notion of paramount equity.'" *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, No. RDB-10-0318, 2012 WL 1145027, at *3 (D. Md. Apr. 3, 2012) (quoting *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552-53 (D. Md. 2011)). "A court may attribute the subsidiary's actions to the parent corporation 'only if the parent exerts considerable control over the activities of the subsidiary.'" *Id.* at *4 (quoting *Mylan Labs., Inc.*, 2 F.3d at 61).

In *Mylan Laboratories*, *Inc. v. Akzo, N.V.*, the Fourth Circuit explained:

> The Maryland Court of Appeals, whose authoritative interpretations of the Maryland long-arm statute bind us, *see Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), has adopted the so-called "agency" test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes. *See Vitro Elec. v. Milgray Elec., Inc.*, 255 Md. 498, 501-03, 258 A.2d 749, 751-52 (1969). Originally advanced by Justice Brandeis in *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335-38, 45 S.Ct. 250, 251–52, 69 L.Ed. 634 (1925), this test allows a court to attribute the actions of a subsidiary corporation to the foreign parent corporation only if the parent exerts considerable control over the activities of the subsidiary. Central to the exertion of such control, and thus to whether the corporate veil may be pierced, is whether significant decisions of the subsidiary must be approved by the parent. *See Finance Co. of Am. v. BankAmerica Corp.*, 493 F. Supp. 895, 903–08 (D. Md. 1980). Other relevant factors include whether the parent and the subsidiary maintain separate books and records, employ separate accounting procedures, and hold separate directors' meetings. *Vitro Elec.*, 258 A.2d at 753. Another consideration in deciding whether to pierce the corporate veil is the level of interdependence between parent and subsidiary; if the Maryland courts are to refrain from exercising jurisdiction over the parent, the subsidiary "[must] have some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding." *Harris v. Arlen Properties, Inc.*, 256 Md. 185, 200, 260 A.2d 22, 29 (1969). Finally, the court must find that [the parent company] knew, or should have known, that its conduct would have some impact in Maryland. *Finance Co.*, 493 F. Supp. at 907.

8

2 F.3d at 61-62. "The court also looks to see if there is an independent reason for the existence of the company; that is, it must not be fraudulently incorporated or undercapitalized." *Newman*, 125 F. Supp. 2d at 723.

In *Newman v. Motorola, Inc.*, the court declined to pierce the corporate veil between a parent and subsidiary where the record before the court demonstrated: (1) the companies filed "a consolidated financial statement, and consolidated tax returns;" (2) the parent company had the power to appoint a majority of the board of directors, and the companies may share directors or other officers; and (3) the parent corporation controlled the subsidiary's management and affairs. 125 F. Supp. 2d at 723. The *Newman* court reasoned:

> These allegations are insufficient to warrant piercing the corporate veil when [the subsidiary] exists as a separate corporate entity, maintains its own financial records, has a separate purpose, and when there has been no allegation that it exists solely as a sham corporation. Indeed, "[s]tock ownership and sharing of directors . . . are insufficient grounds in themselves to justify disregarding the corporate form." *Dewhurst*, 83 F.Supp.2d at 588. *See also Honda*, 941 F. Supp. at 551-52 ("consolidated financial statements and . . . interlocking directorates [are] insufficient to justify piercing the corporate veil.") Further, the fact that [the parent company] will control certain decisions and even must approve changes does not mean the two companies operate as one. *See Dewhurst*, 83 F. Supp. 2d at 589 ("[T]he fact that a parent requires its approval for certain extraordinary loans or ventures does not mean that the parent is controlling the subsidiary.").
>
> The plaintiffs offer even less support for jurisdiction over SBC. They have produced copies of the company website which indicates only that the subsidiaries and parent company are linked. (Pl.s' Opp. to SBC Mot., Ex. C-F.) In addition, the plaintiffs have alleged that SBC, through another subsidiary, conducts research relating to wireless phones and distributes that research to the cellular companies. (*See id.*, Ex. B.) Finally, the plaintiffs point to a joint tax filing and SEC statement. For the reasons provided above, these allegations are insufficient to warrant piercing the corporate veil.

*Id.* at 723. Accordingly, the *Newman* court granted the motion to dismiss for lack of personal jurisdiction. *Id.*

In support of its argument that Advanced Lighting is the alter ego of Venture Lighting, National Fire asserts: (1) Venture Lighting is a wholly owned subsidiary of Advanced Lighting; (2) Venture Lighting and Advanced Lighting have common ownership; (3) Advanced Lighting sets sales and earning goals for Venture Lighting; (4) Advanced Lighting consolidates financial statements and submits a single tax return for itself and its subsidiaries; and (5) Advanced Lighting does not have formal arrangements with Venture Lighting. (ECF No. 74 at 12-14.) As discussed below, these allegations, even if true, are insufficient to impute Venture Lighting's Maryland contacts to Advanced Lighting for jurisdictional purposes.

The parties do not contest that Advanced Lighting and Venture Lighting submit a consolidated tax return (Pl.'s Opp., Amy Patrick Dep., Exhibit A, ECF No. 74-1 at 20:7-10); however, vendor payments are processed through Venture Lighting's individual bank account. *Id.* at 23:18-21. Further, to the extent Advanced Lighting exerts control over Venture Lighting, it engages in typical oversight of subsidiary companies, such as setting annual sales and compliance with tax and financing/debt obligations. *Id.* at 24:12-18. Advanced Lighting also provides financial models for Venture Lighting to project target sales; however, how to meet those targets is left to the discretion of Venture Lighting sales managers. *Id.* at 43:14-44:2. Venture Lighting does not pay a percentage of its sales to Advanced Lighting. *Id.* at 32:18-20.

Nothing before the court suggests that Advanced Lighting exerts considerable control of Venture Lighting or that Venture Lighting's significant decisions are subject to approval of Advanced Lighting. *See State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 447 (D. Md. 2019) (noting that [t]he central inquiry is 'whether significant decisions of the subsidiary must be

10

approved by the parent'") (quoting *Mylan Labs., Inc.* 2 F.3d at 61). That Advanced Lighting and Venture Lighting submit consolidated tax returns and financial statements, and have the same directors, is insufficient to pierce the corporate veil. *In re Am. Honda Motor Co., Inc. v. Dealerships Relations Litig.*, 941 F. Supp. 528, 551-52 (D. Md. 1996) (finding that the "allegation that the various Honda entities use consolidated financial statements and have interlocking directorates, taken as true, would be insufficient to justify piercing the corporate veil").

Further, Venture Lighting's status as a one-hundred percent subsidiary of Advanced Lighting is insufficient to establish agency. *See Mylan Labs., Inc.*, 2 F.3d at 63 (declining to find agency solely on the basis of ownership interest); *Fleetwood v. B.C.E., Inc.*, No. Civ. A. DKC 2003-2125, 2004 WL 903754, at *4 (D. Md. Apr. 28, 2004) (noting that "[w]ithout more, '[i]nterlocking directorships and complete ownership of the subsidiary's stock by the parent,' are insufficient to demonstrate an agency relationship") (quoting *Call Carl, Inc. v. BP Oil Corp.*, 391 F. Supp. 367, 372 (D. Md. 1975)). To the extent National Fire maintains that agency flows from Advanced Lighting's ownership of Venture Lighting and the Sunmaster lamp marks, the court disagrees that this is remotely adequate. *See Fleetwood*, 2004 WL 903754, at *6 (finding trademark licensure allegations insufficient to pierce the corporate veil where parent corporation licensed trademarks for use by subsidiary). The record allegations before the court, even construed in the light most favorable to National Fire, fail to support a reasonable conclusion that Advanced Lighting exerts control over Venture Lighting "greater than that of a typical parent company."[2] *Exxon Mobil Corp.*, 406 F. Supp. 3d at 447.

---

[2] To the extent National Fire relies on an agency theory of personal jurisdiction, as stated previously, Maryland courts "consider the veil-piercing issue [] and the Maryland long-arm statute's agency inquiry to be virtually identical." *Mylan Labs., Inc.*, 2 F.3d at 63. Therefore, because the court declines to rest personal jurisdiction on veil-piercing, the court "likewise decline[s] to construe the Maryland long-arm statute as authorizing the Maryland courts to assert jurisdiction over [Advanced Lighting] on agency grounds." *Id.*

11

As explained above, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md.*, 334 F.3d at 396. Because the court finds that the Maryland long-arm statute does not authorize personal jurisdiction over Advanced Lighting, the court declines to decide whether the exercise of jurisdiction comports with due process.[3] *See* Mylan Labs., Inc., 2 F.3d at 63 (declining to consider due process analysis where the court declines to pierce the corporate veil and rejects the agency theory of personal jurisdiction); *Newman*, 125 F. Supp. 2d at 723 (granting motion to dismiss for lack of personal jurisdiction after finding allegations were insufficient to warrant piercing the corporate veil).

IV.   **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant Advanced Lighting Technologies, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction (ECF No. 68) will be granted.

/S/

_____
Julie R. Rubin
United States District Judge

September 20, 2023

---

[3] Personal jurisdiction over a non-resident defendant is constitutionally permissible where the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted). Without reaching a conclusion on the discrete issue, the court notes that the record does not at this stage appear to contain facts to support a conclusion that Advanced Lighting has or had sufficient minimum contacts with Maryland. Advanced Lighting Chief Financial Officer, Amy Patrick, attests that Advanced Lighting has sold no products in Maryland; has no customers in Maryland; manufactures no products (anywhere); and neither owns nor leases property or office space in Maryland. (Def.'s Mot., Amy Patrick Decl., Exhibit 1, ECF No. 68-1 ¶¶ 5-7.) National Fire's allegations do not conflict with these attestations.